**SIGNED THIS: September 1, 2026**

**Mary P. Gorman**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 26-90004 |
| COLTON L. MANN, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

# O P I N I O N

Before the Court is the Chapter 7 Trustee's Objection to Claim of Exemption. The Trustee objects to the Debtor's claimed homestead exemption in his prior residence. Because the Debtor abandoned his homestead prior to the bankruptcy filing, he is not entitled to a homestead exemption. The Trustee's Objection to Claim of Exemption will be sustained.

## I. Factual Background

Colton L. Mann ("Debtor") filed his voluntary petition under Chapter 7 on January 5, 2026. Roger L. Prillaman was appointed Chapter 7 trustee ("Trustee"). Relevant to the issues here, on his schedules and statement of financial affairs, the Debtor stated that he was not married and that he lived at 235 W. State, Lovington, Illinois. He scheduled a 50% ownership interest in a house valued at $60,000 at 320 N. Walnut, Arthur, Illinois ("Walnut property") and claimed his $30,000 interest as fully exempt under the Illinois homestead exemption, noting that he was "temporarily not living there due to [a] pending divorce." The Trustee filed his Objection to the claimed homestead exemption, asserting the Debtor had abandoned his homestead estate prior to filing his petition by moving out of the Walnut property with no intention of returning. The Trustee says that, at the time of the bankruptcy filing, there was not in fact a pending divorce; to the contrary, a judgment dissolving the Debtor's marriage had been entered on May 14, 2025, and a final order on the disposition of the Walnut property had been entered in September 2025. The Debtor testified at his creditors meeting that he moved out of the Walnut property in October 2024, remarried, and signed a contract to sell the Walnut property before filing bankruptcy.

According to the documents the Trustee obtained from the Debtor, the Debtor and his ex-wife signed a sales contract on December 17, 2025, agreeing to sell the Walnut property to a third-party buyer. Although the pending sale was not disclosed by the Debtor on his schedules or statement of financial affairs, he

nevertheless closed the sale on January 23, 2026—just three weeks after the bankruptcy filing. The Debtor received $22,147.10 in proceeds from the sale. At his creditors meeting, the Debtor told the Trustee he had approximately $3500 left of the sale proceeds; the remainder was used to purchase household appliances, to make payments on his own and his new wife's credit card bills, and to pay a car loan.

The Trustee supplemented his Objection by filing a copy of the property settlement order entered on September 26, 2025, in Moultrie County Circuit Court. The Debtor and his ex-wife had agreed that the ex-wife would have 45 days to attempt to refinance the house and buy the Debtor out or the house would be sold and the net proceeds divided equally. The order did not provide the Debtor with any option to buy out his ex-wife or to regain possession of the Walnut property.

The Debtor filed a memorandum responding to the Trustee's Objection. The Debtor asserted that, during the dissolution of marriage process, he had occasionally contemplated moving back into the Walnut property, but he provided no details of any efforts he made to do so and admitted that he had no intention of returning to the Walnut property at the time the bankruptcy petition was filed. The Debtor also acknowledged that he had improperly completed the sale of the home after the bankruptcy filing and had not informed the Trustee or the Court of the impending sale. He also agreed that he did not use the sale proceeds to purchase another home.

The matter has been fully briefed and is ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL Civil LR 40.2(A); *see* 28 U.S.C. §157(a). Matters concerning exemptions from property of the estate are core proceedings. 28 U.S.C. §157(b)(2)(B). The issues before the Court arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

When the Debtor filed his petition, all of his property, including his interest in the Walnut property, became property of his bankruptcy estate. 11 U.S.C. §541(a). As an Illinois resident, the Debtor was required to use the Illinois exemptions in his efforts to exempt the Walnut property from the bankruptcy estate. 11 U.S.C. §522(b); 735 ILCS 5/12-1201. Illinois allows debtors an exemption in their homestead property:

> Every individual is entitled to an estate of homestead to the extent in value of $50,000 of his or her interest in a farm or lot of land and buildings thereon, a condominium, or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence. That homestead and all right in and title to that homestead is exempt from attachment, judgment, levy, or judgment sale for the payment of his or her debts or other purposes and from the laws of conveyance, descent, and legacy[.]

735 ILCS 5/12-901.

The Illinois homestead exemption requires that homestead property be occupied as a residence; an individual abandons their homestead and loses the exemption if they cease occupancy. However, recognizing that an individual might temporarily live somewhere other than their permanent residence, the Illinois Supreme Court has held that "[w]hether one entitled to a homestead may be said to have abandoned it by moving away from it is largely a matter of intention to be determined by the facts of each case." *Kawszewicz v. Kawszewicz*, 385 Ill. 461, 468, 53 N.E.2d 386, 389 (1944) (citing *Rasmussen v. Rasmussen*, 368 Ill. 137, 140, 13 N.E.2d 166, 168 (1938)). Non-occupancy of the homestead will be taken as abandonment "unless it clearly appears that there is an intention to return and occupy [the homestead]." *Rasmussen*, 368 Ill. at 141 (citations omitted). The intention to return "may be shown by acts or words or both." *Id.* at 140. "Such intention to return must be unequivocal—equivocal intention to return is not sufficient." *In re Moneer*, 188 B.R. 25, 27 (Bankr. N.D. Ill. 1995) (citing *Rasmussen*, 368 Ill. at 141).

Here, the Debtor claimed the Walnut property exempt as his residence under the Illinois homestead exemption. The Trustee objected to this claim of exemption, arguing that the Debtor had abandoned his homestead estate because he did not occupy the Walnut property and did not intend to return to it at the time he filed his bankruptcy petition. The Debtor disagreed, claiming that he had not abandoned the Walnut property but had moved out due to marital separation and then sold it due to a state-court order. As the objector, the Trustee bears the burden of proof. Fed. R. Bankr. P. 4003(c). The standard

of proof is a preponderance of the evidence. *In re Doyle*, 209 B.R. 897, 900 (Bankr. N.D. Ill. 1997) (citation omitted).

In a bankruptcy case, it is "the date of filing when 'the status and rights of the bankrupt, creditors and the trustee . . . are fixed.'" *In re Awayda*, 574 B.R. 692, 695 (Bankr. C.D. Ill. 2017) (quoting *White v. Stump*, 266 U.S. 310, 313 (1924)). "What is exempt, and what is not, depends on the state of affairs when bankruptcy begins." *Matter of Burciaga*, 944 F.3d 681, 684 (7th Cir. 2019) (citations omitted). This principle, referred to as the "snap-shot rule," means that whether the Debtor qualified for the homestead exemption is determined as of the time he filed for bankruptcy on January 5, 2026.

There is no dispute that, when he filed his petition, the Debtor did not occupy the Walnut property. He testified at his creditors meeting that he had moved out of the property in October 2024. After moving out, his dissolution of marriage was finalized, and a state-court order was entered providing options for the disposition of the Walnut property that did not include the Debtor returning to the property. The Debtor had also remarried and, although he did not disclose that marriage in his bankruptcy filing, he admits in his memorandum that he has established a new household with his new wife. There is also no dispute that, when the Debtor filed for bankruptcy, he no longer intended to return to the Walnut property—he had already signed a contract to sell the property.

The facts as admitted by the Debtor do not support his claim of exemption but rather support a finding that he abandoned his homestead in the Walnut property before filing this case. Decisions addressing abandonment generally

turn on whether the facts of the case demonstrate the person claiming the exemption had the required intent to return. *See Moneer*, 188 B.R. at 28 (finding that "evidence failed to demonstrate that the Debtor intended to return and occupy the Property as a homestead"); *In re Owens*, 269 B.R. 794, 798 (Bankr. N.D. Ill. 2001) (finding that the debtor intended to return to the property based on her unrebutted testimony that temporary absence was for purpose of caring for ailing mother); *In re Colton*, 591 B.R. 829, 833 (Bankr. C.D. Ill. 2018) (Perkins, J.) (concluding, based on debtor's testimony, that she did not intend to permanently abandon marital home despite leasing apartment while separated from husband).

The Debtor argues that this Court should not create a "bright-line rule" that a debtor abandons their homestead exemption if they are not occupying the homestead and do not intend to return to it. In support, he cites *In re Huddleston*, 2005 WL 2271859, at *1 (Bankr. C.D. Ill. Sept. 7, 2005) (Fines, J.), which found an exception to the normal *Rasmussen* rule on abandonment when a homestead sale straddles the filing of the bankruptcy petition. The *Huddleston* court concluded that the case of *Wagenbach v. PHI Financial Services, Inc. (In re Wagenbach)*, 232 B.R. 112 (Bankr. C.D. Ill. 1999) (Altenberger, J.), controlled the decision.

In *Wagenbach*, prior to filing the petition, the debtors had signed a contract to sell their homestead and moved to temporary housing in a different state. *Wagenbach*, 232 B.R. at 113. The closing was delayed, however, and the debtors filed their bankruptcy petition before the sale completed. They claimed an

exemption in the homestead under §12-901, and the trustee objected, arguing that the debtors had abandoned the homestead by moving out with no intention of returning. Not satisfied with a rigid application of the *Rasmussen* abandonment rule and finding no relevant Illinois precedent, the *Wagenbach* court adopted the reasoning of courts in other jurisdictions in concluding that the debtors' claim of homestead exemption in property they were trying to sell before establishing a new homestead was proper. *Id.* at 115-18 (citing *In re Beebe*, 224 B.R. 817, 822 (Bankr. N.D. Fla. 1998) ("As long as there is a continuing good faith intent to sell the homestead, even after it has been vacated, and invest the proceeds in a new homestead within a reasonable time, the homestead will not be considered to have been abandoned."), and *Moore v. Krueger*, 179 Wis. 2d 449, 456-457, 507 N.W.2d 155, 158 (Wis. Ct. App. 1993) (It would be unreasonable and "contrary to the requirement that [the homestead exemption statute] be construed liberally" to insist "that an owner occupy the homestead at the time of the sale in order to maintain the homestead exemption for the sale proceeds.")) (other citations omitted).

To the extent that *Wagenbach* creates an exception to the normal homestead residency requirement, such an exception does not help the Debtor here. The Debtor moved out of his homestead long before entering into the sales contract and long before it had even been determined that a sale would occur. And, evidently, he spent the proceeds from the sale of the Walnut property shortly after the bankruptcy filing on items other than a new homestead. *Wagenbach* is somewhat of an outlier and, at best, creates only the narrowest of

exceptions to the general rule of required occupancy. The *Wagenbach* facts are clearly distinguishable from the facts here; the case provides no support to the Debtor.

In somewhat of a last-ditch effort, the Debtor conflates the homestead exemption with a separate Illinois exemption for the proceeds of the sale of a homestead. Under Illinois law, proceeds from the sale of a homestead are exempt in the same amounts set forth in the homestead exemption for a period of one year after the sale. 735 ILCS 5/12-906. The Debtor argues that, because proceeds remain exempt even if not used or intended to be used to purchase a new homestead, his failure to use the proceeds from his sale for a new homestead should not disqualify his claim of exemption. *See Awayda*, 574 B.R. at 698-99; *In re Chapman*, 2026 WL 692531, at *6 (Bankr. C.D. Ill. Mar. 11, 2026) (Henderson, J.). But, as set forth above, when the Debtor filed his petition, he owned an interest in real estate, not in proceeds. He did not and could not have claimed an exemption in proceeds from the sale of a homestead. The snap-shot rule discussed above requires an analysis of the Debtor's available exemptions based on what he owned at the time he filed and not on what he owned after wrongfully converting property of the estate three weeks after filing.[1]

[1] The Debtor's sale of the Walnut property after filing was wrongful. He violated his duty to turn over property of the estate to the Trustee. 11 U.S.C. §521(a)(4). He also violated the automatic stay by taking control of estate property. 11 U.S.C. §362(a)(3). The Supreme Court has held, however, that such wrongful conduct cannot form the basis for denying an exemption that a debtor is otherwise entitled to claim. *Law v. Siegel*, 571 U.S. 415, 425-28 (2014). Thus, this Court has not considered the wrongful conduct in analyzing the Debtor's entitlement to a homestead exemption. No part of this Court's decision is intended to punish or sanction the Debtor for selling estate assets. As the Supreme Court also pointed out, there are remedies other than the denial of an exemption to punish wrongful conduct. *Id*. at 427-28.

Further, the Illinois proceeds exemption applies only to proceeds from the sale of a homestead. The Debtor might have relied on the proceeds exemption if he had sold the Walnut property three weeks before filing bankruptcy instead of three weeks after he filed, but the Trustee still could have questioned whether the proceeds came from the sale of property in which the Debtor could legitimately claim a homestead at the time. That analysis would likely be the same as the analysis of the actual homestead exemption discussed above, resulting in the denial of a proceeds exemption for the same reasons that the homestead exemption will be denied here.

In deciding against the Debtor, this Court acknowledges that it is not uncommon for a married person to move out of homestead property when a dissolution of marriage proceeding is pending. This practice, likely favored by significant public policy considerations, can nevertheless lead to difficult factual questions about whether a person has in fact abandoned their homestead, or instead is only temporarily absent from it. Generally, "if one spouse separates from the other and abandons the premises, the homestead rights accrue to the spouse who remains in the residence." *Anderson v. Anderson*, 42 Ill. App. 3d 781, 784, 356 N.E.2d 788, 790-91 (1st Dist. 1976) (collecting cases). However, a "temporary absence for any cause deemed sufficient with the intention of returning . . . will not forfeit the right." *Moneer*, 188 B.R. at 27 (citing *Dixon v. Moller*, 42 Ill. App. 3d 688, 691, 356 N.E.2d 599, 603 (5th Dist. 1976)). "When no new homestead has been acquired, absence from the old one, unless for an

extended period of time, does not create a presumption of its abandonment." *Dixon*, 42 Ill. App. 3d at 691.

Courts considering whether an abandonment has occurred in the context of a dissolution of marriage look to various factors in determining whether the absence is in fact an abandonment. In *Colton*, the court addressed whether a debtor had abandoned a homestead when, due to a marital separation, she moved out nine months prior to filing for bankruptcy. *Colton*, 591 B.R. at 831. The *Colton* court concluded that the debtor did not intend to permanently abandon the homestead but instead planned to return in the event the marital home was awarded to her in a divorce. In making that judgment, the court relied on the debtor's own testimony about her intentions, her keeping of personal possessions in the home, her continued access to the home, and her continued care of the home when her husband was away. *Id.* at 833.

By contrast, the *Moneer* court held that a debtor who moved out of the homestead during the pendency of a dissolution of marriage had abandoned his homestead. In reaching its decision, the court pointed primarily to the debtor's "extended period of nonoccupancy" before he filed for bankruptcy. *Moneer*, 188 B.R. at 28. The court also found that the debtor's departure from the homestead "was a voluntary solution to his marital woes" designed, at least in part, to "distance himself from his spouse and daughter." *Id.* Although the debtor submitted an affidavit claiming an intention to return, his conduct indicated otherwise. *Id.* ("no evidence of any continued periodic occupancy of the Property,

or retention of the same as the Debtor's legal address for voter registration and other purposes").

Here, the Debtor also had an extended period in which he did not occupy the homestead before his bankruptcy filing. He has not claimed that he left involuntarily or that he periodically occupied the Walnut property or continued to use the Walnut property for any purpose after he left in October 2024. The Debtor says in his memorandum that "[a]t certain times during the divorce process the Debtor contemplated moving back into the house if he could buy out his wife's interest[.]" However, "an equivocal intention to return is not sufficient." *Rasmussen*, 368 Ill. at 141 (citations omitted). The Debtor's vague assertion that he thought about returning to the Walnut property is equivocal and insufficient to support his exemption claim.

The Trustee met his burden of proof by submitting documents and relying on undisputed facts. The Debtor initially claimed the homestead exemption by asserting that his dissolution of marriage was pending and that his absence from the homestead was temporary. But he quickly had to admit that such assertions were not true and thereafter never suggested any other basis for his claimed exemption. If there were more to the story and facts that existed which might bring the Debtor closer to the *Colton* situation than the *Moneer* situation, he never attempted to present those facts despite being given every opportunity to do so. For all these reasons, his claim of a homestead exemption must be denied.

## IV. Conclusion

Under Illinois law, an individual abandons his homestead if he ceases to occupy it and does not intend to return to it. Here, when the Debtor filed for bankruptcy, he neither occupied nor intended to return to the Walnut property in which he claimed a homestead exemption. The Debtor stipulated to his lack of an intention to return to the Walnut property, and, accordingly, his claim of a homestead exemption in the property must be disallowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###